**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DAVID KIEFER, ) | |
| ) | CASE NO.  5:13-cv-00679 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff David Kiefer ("Kiefer ") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying his claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title(s) II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

### I. Procedural History

On January 26, 2010, Kiefer filed an application for POD, DIB, and SSI alleging a

disability onset date of April 15, 2009. His application was denied both initially and upon reconsideration. Kiefer timely requested an administrative hearing.

On July 20, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Kiefer, represented by counsel, and an impartial vocational expert ("VE") testified. On July 28, 2011, the ALJ found Kiefer was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

### Personal and Vocational Evidence

Age forty-four (44) at the time of his administrative hearing (Tr. 31), Kiefer is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). Kiefer has a limited education and past relevant work as a plastic mold injector. (Tr. 31.)

## III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Kiefer was insured on his alleged disability onset date, April 15, 2009, and remained insured through the date of the ALJ's decision, July 28, 2011. (Tr. 33.) Therefore, in order to be entitled to POD and DIB, Kiefer must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Kiefer established medically determinable, severe impairments, due to "back sprains and strains, mild degenerative disc changes of the lumbar spine, alcohol and marijuana abuse, cocaine abuse in remission and mood disorder with anger." (Tr. 24.) However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 25.) Kiefer was found capable of performing some

---

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

his past relevant work, and was also determined to have a Residual Functional Capacity ("RFC") for a limited range of light work.  (Tr. 26-27, 31.)  The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Kiefer was not disabled.

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the

Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  Analysis

*Treating Physician*

Kiefer asserts that the ALJ erred by rejecting the opinion of his treating psychologist –

Ramone Ford, Ph. D. (ECF No. 17 at 9-12.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[2]

If it is determined that a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5). The purpose of this requirement is two-fold.

---

[2] Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id*. (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).  Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544.  Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Nevertheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406. The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability.  This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled.  "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*.  It is the

Commissioner who must make the final decision on the ultimate issue of disability.  *Duncan*, 801 F.2d at 855;  *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

On August 31, 2010, Dr. Ford completed a Mental Status Questionnaire, indicating he had first seen Kiefer on July 16, 2009 and last seen him on August 16, 2010.  (Tr. 546-48.)  Kiefer's mood was reported as depressed and his affect congruent.  *Id*.  Kiefer had increased anxiety around others, resulting in sweaty hands, fidgeting, and increased heart rate.  *Id*.  While Kiefer exhibited "some paranoia," he had no visual or auditory hallucinations and was oriented in all spheres.  *Id*.  Dr. Ford indicated that Kiefer had poor concentration and a limited fund of information, but his memory was not impaired.  *Id*.  He noted some impulsive behaviors including online dating problems and past alcohol and cocaine abuse issues.  *Id*.  He reported that Kiefer could understand and follow directions most of the time.  (Tr. 547.)  He had difficulty sustaining concentration for extended periods and was unable to concentrate on tasks for a long time without being redirected back to the task.  *Id*.  Dr. Ford opined Kiefer was socially isolated and preferred contact with others "online" and would not adapt well to change.  *Id*.  Dr. Ford averred that Kiefer "probably could not" maintain the rigors of a daily work schedule, and would struggle with following a work routine and interacting with others.  *Id*.  However, he also noted that Plaintiff regularly attended his appointments at Portage Path, called to cancel appointments, and was very compliant with his prescribed medication regimen (Tr. 550).[3]

---

[3] In a "Daily Activities Questionnaire" completed the same date, Dr. Ford indicated that Kiefer lived with his father but never visits the rest of his family and only rarely visits with friends in short 15-30 minute intervals.  (Tr. 549.)  Kiefer had legal difficulties including two DUIs and one incidence of domestic violence.  *Id*.  He had poor stress tolerance, back problems, and limited healthy coping skills.  *Id*.  Kiefer prepared meals for his father and himself, completed

Only a week later, on September 7, 2010, Dr. Ford provided a second assessment. (Tr. 686-697.) He reported that Kiefer was extremely limited in the ability to maintain concentration and attention for extended period; markedly limited in his ability to relate to other people and perform activities within a schedule, maintain regular attendance, and be punctual; and, moderately limited in his degree of restriction of daily activities. (Tr. 686.) Dr. Ford offered that Kiefer was only mildly limited in his ability to sustain a routine without special supervision. *Id*. He opined that Kiefer would be extremely limited in responding appropriately to co-workers; markedly limited in understanding, carrying out, and remembering instructions; and, markedly limited in responding appropriately to supervision, customary work pressures, and changes in the work setting. (Tr. 686.) Kiefer was also reported to be extremely limited in his ability to behave in an emotionally stable manner; moderately limited in his ability to perform complex, repetitive, or varied tasks; and, mildly limited in the use of good judgment, but he had no limitations performing simple tasks. (Tr. 687.) Dr. Ford opined that the severity of these limitations had existed since at least June 1, 2009; and, that Kiefer suffered from depression and anger since he was a teenager. *Id*. He further noted that medication had a limited affect on reducing Kiefer's depression. *Id*. He also opined that Kiefer would miss three or more days of work each month due to symptoms. *Id*.

After listing some of the limitations contained in the aforementioned assessments, the ALJ addressed Dr. Ford's opinions as follows:

   I give little weight to the opinions of Dr. Ford because they are internally

---

chores, had fair grooming practices, paid bills, shopped for the household, and could drive without difficulty. (Tr. 550.) Kiefer had been compliant with treatment, attended appointments on a biweekly basis, and called ahead if he needed to cancel an appointment. *Id*.

> inconsistent. They are also inconsistent with treatment notes, which indicate the claimant complies with treatment and is stable on medication. His ability to participate in treatment and maintain relationships with his girlfriend, ex-wife and family do not support serious limitations in the ability to relate to others or an inability to maintain attention and behave in an emotionally stable manner. Further, the claimant's activities of daily living do not support the level of restrictions alleged.

(Tr. 29.)

The ALJ observed that Dr. Ford's August 2010 opinion contained limitations that Kiefer could not sustain attention for extended periods and was unable to sustain attention for long periods without being redirected back to the task. (Tr. 29.) The ALJ stated that a portion of the September 2010 opinion – that Kiefer had only mild limitation sustaining a *routine* without supervision – was inconsistent with the above cited portion. *Id.* (emphasis added). Reviewing the two opinions, however, reveals that the portions identified by the ALJ are not inconsistent. The relevant portion of the August 2010 opinion discussed Kiefer's limitations as it related to *attention* and *concentration*. (Tr. 547.) Consistent with that opinion, Dr. Ford's September 2010 opinion noted that Kiefer had extreme limitations in his ability to maintain concentration and attention for extended periods. (Tr. 686.) Essentially, the ALJ compared two different areas of functioning and found an inconsistency rather than comparing the same area of functioning in both opinions. Based on this alleged inconsistency, the ALJ appears to have rejected Dr. Ford's opinion as a whole. The Court finds that the decision's reasoning fails to satisfy the "good reasons" requirement as it is simply inaccurate. Both the August and September assessment contain significant restrictions as they relate to the ability to maintain attention and concentration. Moreover, even if the limitations identified by the ALJ are construed to be inconsistent, such an inconsistency would fail to explain why the ALJ rejected the remaining

limitations contained in Dr. Ford's opinions, especially as it relates to Kiefer's ability to interact with co-workers.

The ALJ also stated that Dr. Ford's opinions are inconsistent with his treatment notes which indicate that Kiefer is compliant with treatment and "stable" on medication. The Court fails to see how Kiefer's compliance with prescribed treatment undermines Dr. Ford's opinion. If Dr. Ford's opinions are inconsistent with other portions of his treatment notes, the decision fails to offer specifics. Even reading the opinion as a whole, the ALJ has not discussed Kiefer's treatment history with Dr. Ford in any meaningful manner.[4] The ALJ's observation – that Kiefer's depression is stable with medication – does not appear to stem from Dr. Ford's treatment notes, as the decision cites a progress note from Trevor Bullock, D.O., who treated Kiefer for his physical ailments. (Tr. 28.) Nonetheless, the observation that Kiefer was "stable" is of rather limited utility in the disability context. *Hicks v. Comm'r of Social Sec.*, 2009 WL 3127183 (S.D. Ohio, Sept. 28, 2009) ("Stable" is a medical term that simply means a condition is neither better nor worse); *Lechner v. Barnhart*, 321 F.Supp.2d 1015 (E.D. Wisc. 2004) ("One can be stable and yet disabled."); *Davisson v. Astrue*, 2011 U.S. Dist. LEXIS 64263 (N.D. Ohio Jun. 17, 2011) ("A person can have a condition that is both 'stable' and disabling at the same time.") (citations omitted). As such, in this context, a treatment note indicating that Kiefer was "stable" does not constitute a "good reason" to reject the opinion of a treating psychologist regarding the claimant's functional limitations.

Finally, the ALJ also based his rejection of Dr. Ford's opinions on Kiefer's ability to

---

[4] The ALJ references only one treatment document from Dr. Ford (Exhibit 31F at 1; Tr. 704), and largely recites Kiefer's substance abuse issues. (Tr. 28.)

11

maintain relationships with his girlfriend, ex-wife, and father. (Tr. 29.) The ALJ opined that these relationships undermine Dr. Ford's opinion that Kiefer has serious limitations in his ability to relate to others or behave in an emotionally stable manner. *Id*. The ALJ, however, is not a medical expert. Without any medical expertise, it is unclear how the ALJ came to the conclusion that an individual who can interact with close family members inherently retains the ability to interact with co-workers or the general public. It is well-established that an ALJ may not substitute personal opinions for those of medical professionals. *See, e.g., Meece v. Barnhart*, 192 Fed. App'x. 456, 465 (6th Cir. 2006) ("[T]he ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.") (*citing McCain v. Dir., Office of Workers' Comp. Programs*, 58 Fed. App'x 184, 193 (6th Cir. 2003) (citation omitted); *Pietrunti v. Director, Office of Workers' Comp. Programs, United States DOL*, 119 F.3d 1035, 1044 (2nd Cir. 1997); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("But judges, including [ALJs] of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.")); *accord Winning v. Comm'r of Soc. Sec.*, 661 F. Supp. 2d 807, 823-24 (N.D. Ohio 2009) ("Although the ALJ is charged with making credibility determinations, an ALJ 'does not have the expertise to make medical judgments.'"); *Stallworth v. Astrue*, 2009 WL 2271336 at *9 (S.D. Ohio, Feb. 10, 2009) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record.") (*quoting Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000)).

The Court finds that the ALJ erred by not giving good reasons for rejecting the limitations assessed by Kiefer's treating psychologist, Dr. Ford. Kiefer's remaining assignment of error is

12

rendered moot and will not be addressed in the interests of judicial economy.

### VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence.  Accordingly, the decision of the Commissioner is VACATED and the case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this opinion.

IT IS SO ORDERED.

                                                           /s/ Greg White
                                                          U.S. Magistrate Judge

Date: January 8, 2014